DeMilo and Company, Inc. *v.* Department
of Transportation et al.
(15137)

Peters, C. J., and Callahan, Borden, Norcott and Katz, Js.

Argued February 8—decision released May 23, 1995

*Daniel Shepro,* for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

Per Curiam. The plaintiff, DeMilo and Company, Inc. (DeMilo), appealed to the Superior Court from a decision of the defendant commissioner of the department of transportation (commissioner),[1] in which the

---

[1] The defendants are the state of Connecticut, the department of transportation and J. William Burns, commissioner of transportation. For

commissioner determined the amount of relocation assistance to which DeMilo was entitled under the Uniform Relocation Assistance Act, General Statutes § 8-266 et seq., and the applicable regulations. The court affirmed the commissioner's decision, and DeMilo appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The facts of this case are undisputed and are related to the facts of two other cases decided this same date. See *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 659 A.2d 148 (1995); *DeMilo & Co.* v. *Commissioner of Motor Vehicles*, 233 Conn. 281, 659 A.2d 162 (1995). Since 1975, DeMilo has owned and operated a motor vehicle junkyard and parts business in Hartford. On August 1, 1985, the department of transportation (transportation) acquired, by eminent domain, a portion of DeMilo's land. The acquired land consisted of the southeasterly corner of DeMilo's rectangularly shaped parcel, as well as some adjoining land leased by DeMilo from the Barilla family, on which it stored some of its junked vehicles. The land had been acquired by transportation in order to construct a new service road, now known as Liebert Road, in connection with transportation's reconstruction of Interstate 91. The acquired land contained many junked vehicles and automobile parts, which inhibited transportation from going forward with its construction plans.

In June, 1986, the commissioner informed DeMilo that it would be paid the sum of $58,500 as a relocation allowance for the junked vehicles that had to be removed from the acquired land and relocated. DeMilo appealed to the relocation advisory assistance appeals

purposes of this appeal, we will refer to the defendants collectively as the commissioner.

board (board) pursuant to General Statutes § 8-271 and § 8-273-1 of the Regulations of Connecticut State Agencies governing relocation assistance promulgated by the commissioner of transportation.[2] A panel, consisting

[2] General Statutes § 8-271 provides: "RELOCATION ASSISTANCE ADVISORY PROGRAM. (a) Whenever a program or project undertaken by a state agency or under the supervision of a state agency will result in the displacement of any person on or after July 6, 1971, such agency shall provide a relocation assistance advisory program for displaced persons which shall offer the services described herein. If the state agency determines that any person occupying property immediately adjacent to any real property acquired is caused substantial economic injury because of such acquisition, it may offer such person relocation advisory services under such program.

"(b) Each relocation advisory assistance program required by subsection (a) shall include such measures, facilities, or services as may be necessary or appropriate in order (1) to determine the needs, if any, of displaced persons for relocation assistance; (2) to provide current and continuing information on the availability, prices and rentals, of comparable decent, safe and sanitary sales and rental housing, and of comparable commercial properties and locations for displaced businesses; (3) to assure that, within a reasonable period of time, prior to displacement there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families and individuals displaced, decent, safe and sanitary dwellings, as defined by the commissioner of transportation for transportation projects and by the commissioner of housing for all other state agency programs and projects, equal in number to the number of and available to such displaced persons who require such dwellings and reasonably accessible to their places of employment, except that the commissioner of transportation for transportation projects and the commissioner of housing for all other state agency programs and projects may prescribe by regulation situations when such assurances may be waived; (4) to assist a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location; (5) to supply information concerning federal and state housing programs, disaster loan programs and other federal and state programs offering assistance to displaced persons; (6) to provide other advisory assistance services to displaced persons in order to minimize hardship to such persons in adjusting to relocation.

"(c) The heads of state agencies shall coordinate relocation activities with project work, and other planned or proposed governmental actions in the community or nearby areas which may affect the carrying out of the relocation assistance programs."

Section 8-273-1 of the Regulations of Connecticut State Agencies provides: "RELOCATION ASSISTANCE APPEAL

of three board members, held a hearing, as required by General Statutes § 4-179[3] and § 8-273-1 of the regulations,

"(a) Any person aggrieved as to the provisions of Chapter 135 of the General Statutes of Connecticut, as revised, should first request reconsideration by the State agency of the decision initially received as to relocation assistance. If the person aggrieved is not satisfied by the decision rendered by the State agency upon reconsideration, he then may request a hearing before the Relocation Advisory Assistance Appeals Board.

"(b) The request must be submitted in writing to the State agency causing the displacement within eighteen months after the date of acquisition of real property by the State agency causing the displacement by land acquisition programs, by building code enforcement activities, or by a program of voluntary rehabilitation of buildings or other improvements conducted pursuant to governmental supervision or the effective date of these regulations whichever is later.

"(c) A Relocation Advisory Assistance Appeals Board shall be established by the Commissioner of Transportation and another Appeals Board by the Commissioner of Community Affairs. The Board established by the Commissioner of Transportation will hear matters concerning transportation projects and the Board established by the Commissioner of Community Affairs will hear matters concerning all other State agency programs and projects.

"(d) The Board will review applications of all persons aggrieved, hold hearings thereon, and report its findings within 15 days after the hearing to the Transportation Commissioner on matters concerning transportation projects, and the Community Affairs Commissioner on matters concerning all other State agency programs and projects.

"(e) The respective Commissioners shall make the final administrative decisions and advise the appellant of his decision in accordance with Section 4-179 of the General Statutes of Connecticut, as revised."

[3] General Statutes § 4-179 provides: "AGENCY PROCEEDINGS. PROPOSED FINAL DECISION. (a) When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision.

"(b) A proposed final decision made under this section shall be in writing and contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision.

"(c) Except when authorized by law to render a final decision for an

which extended, in ten sessions, from February through April, 1988. Following the hearing, the panel submitted its proposed decision to the parties, who were then given an opportunity to submit briefs regarding the proposed decision. Both parties took advantage of that opportunity.

The panel's proposed decision set forth findings of fact and conclusions of law. The panel found that the subject of the relocation allowance consisted of 1000 junked vehicles, which were best characterized as "low value, high bulk personal property." The panel further found that the replacement cost of the vehicles was $35 each, so that the total relocation allowance payable to DeMilo was $35,000.[4] After reviewing the panel's proposed decision and the briefs submitted by the parties, the commissioner adopted the proposed decision and issued a final decision that DeMilo was entitled to $35,000 as its relocation allowance.

DeMilo appealed from the commissioner's decision to the Superior Court claiming that: (1) it was a denial of its due process rights for the commissioner and the board to act as "prosecutor, judge and jury" in the administrative procedure; (2) the relocation allowance was unreasonable; (3) the board's proposed decision was invalid because only one member signed it; and (4) the commissioner's decision was untimely filed in violation of General Statutes § 4-180. The trial court affirmed the commissioner's decision and dismissed the appeal. On appeal to this court, DeMilo pursues only its first two claims.

---

agency, a hearing officer shall, after hearing a matter, make a proposed final decision.

"(d) The parties and the agency conducting the proceeding, by written stipulation, may waive compliance with this section."

[4] The relocation allowance cannot exceed the replacement cost. See General Statutes § 8-268 (a) (2).

In addressing the due process claim, the trial court concluded that the procedure employed by the commissioner was in accordance with the statutes and regulations governing administrative appeals and that many other administrative agencies follow the same basic procedure. The gravamen of DeMilo's claim is that those statutes and regulations are unconstitutional. The court determined, however, that DeMilo's claim was not supported by authority. The court concluded, therefore, that DeMilo had failed to overcome the presumption in favor of the constitutionality of the statutory scheme. *Zapata* v. *Burns*, 207 Conn. 496, 507–508, 542 A.2d 700 (1988).

With respect to DeMilo's claim of unreasonable replacement cost, the trial court found that the board had considered "abundant evidence" regarding the relocation allowance. DeMilo's owner, Frank DeMilo, and DeMilo's expert, Stanley J. Lesnewsky, testified before the board that there were 1000 junked vehicles that had to be relocated. Sol W. Toder, the owner of an automobile salvage business who testified as an expert for transportation, testified that he had visited DeMilo's Hartford site at least eight times and found that the subject vehicles could not be used for parts. Rather, he opined, the vehicles could best be used as scrap. Finally, Frank DeMilo testified that, at the relevant time, he could receive $20 or $22 per gross ton[5] for such vehicles as scrap, and that the average vehicle weighed 1500 pounds, while heavy vehicles like ambulances or hearses may weigh up to 4000 pounds. The trial court concluded that DeMilo was unable to demonstrate that the relocation allowance awarded by the commissioner was unreasonable.

Our examination of the record and the briefs and arguments of the parties on appeal persuades us that

---

[5] Frank DeMilo defined a gross ton as 2240 pounds.

the judgment of the trial court should be affirmed. The issues raised on appeal were resolved properly in the court's thoughtful and comprehensive memorandum of decision. *DeMilo & Co.* v. *Dept. of Transportation,* 43 Conn. Sup. 441, 658 A.2d 986 (1995). Because that memorandum of decision fully addresses the arguments raised in the present appeal, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law on those issues. It would serve no useful purpose for us to repeat the discussion contained therein. *Greater Bridgeport Transit District* v. *State Board of Labor Relations,* 232 Conn. 57, 64, 653 A.2d 151 (1995); *Advanced Business Systems, Inc.* v. *Crystal,* 231 Conn. 378, 380–81, 650 A.2d 540 (1994); *Van Dyck Printing Co.* v. *DiNicola,* 231 Conn. 272, 274, 648 A.2d 877 (1994).

The judgment is affirmed.